IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JASON WAYNE PARSONS, AS DEPENDENT ADMINISTRATOR OF THE ESTATE OF ANITA JOANN PARSONS, | § § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:17-cv-1828-D |
| VRM (VENDOR RESOURCE MANAGEMENT) DULY AUTHORIZED AGENT FOR THE SECRETARY OF VETERANS AFFAIRS, BANK OF AMERICA NA, AND AARON PARKER, | § § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jason Wayne Parsons, as Dependent Administrator of the Estate of

Anita Joann Parsons, has filed a motion to remand. *See* Dkt. No. 11. United States

District Judge Sidney A. Fitzwater has referred the motion to the undersigned United

States magistrate judge for recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 41.

Defendants Aaron Parker, Bank of America, N.A., and Vendor Resource

Management have filed a response. *See* Dkt. No. 26. Mr. Parsons has not filed a reply,

and his deadline to do so has passed.

For the reasons explained below, Plaintiff's Motion to Remand [Dkt. No. 11]

should be granted.

-1-

## Background

This case arises out of a November 1, 2016 foreclosure sale of property previously owned by Plaintiff Jason Wayne Parsons and his late wife Anita Joann Parsons (the "Property"), who passed away on June 21, 2013. On June 19, 2017, Mr. Parsons, acting as dependent administrator of his wife's estate and seeking to void the foreclosure sale, filed this case in the County Court at Law No. 2, Johnson County, Texas.

On July 12, 2017, Defendants Bank of America, N.A. ("Bank of America") and Vendor Resource Management ("VRM," together with Bank of America and Aaron Parker, "Defendants") jointly removed the case to federal court based solely on diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Dkt. No. 1. Although Bank of America and VRM alleged in their Notice of Removal that VRM did not destroy diversity among the parties, *see id.* ¶ 15, on July 24, 2017, Bank of America and VRM filed a First Amended Notice of Removal explaining otherwise, *see* Dkt. No. 8.

In their Amended Notice, Bank of America and VRM contend that complete diversity exists because "Plaintiff is a citizen of Texas for diversity purposes" and "Bank of America is a citizen of North Carolina under the rules for determination of the citizenship for national banking associations because North Carolina is the state where its main office is located, as provided in its articles of association." *See id.* ¶¶ 14-15. Bank of America and VRM maintain that, although VRM and Mr. Parker "are believed to be citizens of Texas, their citizenship does not defeat complete diversity because they have been improperly joined in this lawsuit." *Id.* ¶16.

Bank of America and VRM reason that Mr. Parsons improperly joined VRM and Mr. Parker in this action because Mr. Parsons has not and cannot state a state law claim against them. *See id.* ¶¶ 18, 23.

In his Motion to Remand, Mr. Parsons maintains that VRM and Mr. Parker destroy complete diversity and that Mr. Parker is a necessary party to this lawsuit.

In light of the parties' dispute, the undersigned limits the discussion of the facts to those necessary to evaluate the alleged improper joinder of VRM and Mr. Parker.

Mr. Parsons's State Court Petition (his "Original Petition") states that, "on or about November 10, 2010, Jason Wayne Parsons and Anita Joann Parsons signed a Deed of Trust securing the financing of the [Property]." Dkt. No. 8-4 ¶ 11. The Deed of Trust was eventually assigned to Bank of America. Dkt. No. 26-1 at 3 of 5, and, on November 1, 2016, Mr. Parker foreclosed on the Property acting as substitute trustee, *see* Dkt. No. 8-4 ¶ 13. Bank of America then conveyed the Property to the Secretary of Veterans Affairs, for whom VRM is a duly authorized agent. *See* Dkt. No. 26 ¶ 16.

Mr. Parsons brings two claims against Defendants collectively. First, he alleges that the dependent administrator to a decedent's estate can unconditionally revoke the foreclosure sale within four years of a mortgagor's death. *See* Dkt. No. 8-4 ¶¶ 17, 20.

Second, Mr. Parsons makes a claim for wrongful foreclosure, arguing that "Defendants failed to send all of the proper notices to the proper people required by TEX. PROP. CODE § 51.002." *See id.* ¶ 21.

On these bases, Mr. Parsons asks the Court to revoke the November 1, 2016 foreclosure sale and require the mortgagee to follow the claims process as contained

in the Texas Estates Code and to rescind the Substitute Trustee's Deed and all subsequent deeds. Mr. Parsons further requests that the Court award him title and possession to the Property and costs of suit and attorney's fees.

Bank of America and VRM contend that "Plaintiff's allegations against VRM could not give rise to any viable claims under state law" because "[t]he alleged violations giving rise to Plaintiff's claims occurred prior to the foreclosure sale" and thus prior to the date that VRM held any interest in the property. Dkt. No. 8 ¶ 18; *see also* Dkt. No. 26 ¶ 16.

Bank of America and VRM point out that a forcible detainer action between VRM and Plaintiff has already been adjudicated and that "the Johnson County Court at Law ... rendered a judgment of possession in favor of VRM." Dkt. No. 8 ¶ 18. Thus, according to Bank of America and VRM, "Plaintiff joined VRM in this lawsuit to defeat diversity jurisdiction under the guise of obtaining injunctive relief to prevent VRM from executing its writ of possession and evicting Plaintiff from the Property." Dkt. No. 26 ¶ 17.

As to Mr. Parker, Bank of America and VRM argue that Mr. Parsons fails to state a claim against Mr. Parker because "Plaintiff has failed to allege any specific facts that would give rise to a viable claim under Texas law against [Mr. Parker], including any specific facts independent of [his] role as Substitute Trustee." Dkt. No. 8 ¶ 23. Bank of America and VRM maintain that the Texas Property Code expressly states that a substitute trustee is not a necessary party to a lawsuit asserting claims against the substitute trustee only in his capacity as substitute trustee and that

-4-

"Plaintiff does not make any allegations that [Mr. Parker] acted contrary to [his] duties as a substitute trustee and has no basis to state a claim against [him]." *Id.* ¶ 24.

## Legal Standard

I.    Federal Jurisdiction and Removal

A federal court's jurisdiction is limited, and federal courts generally may hear a case of this nature only if it involves a question of federal law or where diversity of citizenship exists between the parties. *See* 28 U.S.C. §§ 1331, 1332.

A defendant may remove an action filed in state court to federal court on the basis of diversity if the action is one that could have originally been filed in federal court. *See* 28 U.S.C. § 1441(a). The removing party bears the burden of establishing jurisdiction. *See Miller v. Diamond Shamrock Co.*, 275 F.3d 414, 417 (5th Cir. 2001).

28 U.S.C. § 1332 creates federal subject matter jurisdiction where diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1332(a), (b). "A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). To establish subject matter jurisdiction, "the party asserting federal jurisdiction must distinctly and affirmatively allege the citizenship of the parties." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001) (citation and internal quotations omitted). And, if no amount of damages was alleged in the state court petition, a removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the

jurisdictional minimum. *See* 28 U.S.C. § 1446(c)(2); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

"When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 576 (5th Cir. 2004) (en banc). "In every case where a diverse defendant proves that the plaintiff's decision to join an in-state party is improper, the diverse defendant gains access to the federal courts. If, however, the foreign defendant fails to prove the joinder improper, then diversity is not complete, the diverse defendant is not entitled to remove, and remand is mandated." *Id.* at 575.

A defendant alleging that a non-diverse defendant is improperly joined has the heavy burden of "demonstrating either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 532 (5th Cir. 2006) (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Where there is no dispute or allegation of actual fraud concerning the fact that both the plaintiff and a defendant are citizens of the same state, the sole concern is whether, as a matter of law, the plaintiff can establish a valid state-law cause of action

against the non-diverse defendant. *See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999). "To establish improper joinder under the second prong, the defendant must demonstrate 'that there is no possibility of recovery' against the in-state or non-diverse defendant, 'which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or non-diverse] defendant.'" *Alviar v. Lillard*, 854 F.3d 286, 289 (5th Cir. 2017) (quoting *Smallwood*, 385 F.3d at 573). "A mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Smallwood*, 385 F.3d at 573 n.9 (internal quotation marks omitted).

The United States Court of Appeals for the Fifth Circuit has further instructed that, "[s]ince the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.* at 573. "The burden on the removing party is to prove that the joinder of the in-state parties was improper – that is, to show that sham defendants were added to defeat jurisdiction," such that "[a] showing that the plaintiff's case is barred as to all defendants is not sufficient" and, "[w]hen the only proffered justification for improper joinder is that there is no reasonable basis for predicting recovery against the in-state defendant, and that showing is equally dispositive of all defendants rather than to the in-state defendants alone, the requisite showing has not been made." *Id.* at 575; *see also id.* at 574 (explaining that, "when, on a motion to remand, a showing that compels a holding that there is no reasonable basis

-7-

for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit," and that, "[i]n such cases, it makes little sense to single out the in-state defendants as 'sham' defendants and call their joinder improper," and, "[i]n such circumstance, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such").

Ordinarily, "to determine whether an in-state or non-diverse defendant was properly joined, '[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the ... defendant.'" *Alviar*, 854 F.3d at 289 (quoting *Smallwood*, 385 F.3d at 573). In performing this analysis, a court must consider the allegations in the state-court petition at the time of removal. *See id.* at 290 n.1. If, however, the plaintiff has "omitted discrete facts, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Larroquette v. Cardinal Health 200, Inc.*, 466 F.3d 373, 376 (5th Cir. 2006).

But the Fifth Circuit has "caution[ed] that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the [non-diverse] defendant" and that "any piercing of the pleadings should not entail substantial hearings." *Smallwood*, 385 F.3d at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the

chances of the claim against the [non-diverse] defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden." *Id.* at 574. Further, "[i]n this inquiry the motive or purpose of the joinder of in-state defendants is not relevant." *Id.*

II.   Rule 12(b)(6) Standard

The Fifth Circuit recently clarified that the federal pleading standard, not a state pleading standard, applies to determine whether a non-diverse defendant has been improperly joined. *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 200-01 (5th Cir. 2016) (abrogating three post-*Smallwood* Fifth Circuit cases applying a state pleading standard instead the federal pleading standard). The "12(b)(6)-type analysis ... is shorthand for the federal pleading standard itself ... promulgated by the Supreme Court in the *Bell v. Twombly* and *Ashcroft v. Iqbal* opinions." *Id.* at 203.

In deciding a Federal Rule of Civil Procedure 12(b)(6) motion, the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). To state a claim upon which relief may be granted, Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, Plaintiffs must allege more than labels and conclusions, and, while a court must accept all of the Plaintiffs' allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* But, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, a plaintiff need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that Plaintiff contends entitle him or her to relief. *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 347 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *accord N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 191 (5th Cir. 2015) ("To survive a Rule 12(b)(6) motion to dismiss, the complaint

does not need detailed factual allegations, but it must provide the plaintiff's grounds for entitlement to relief – including factual allegations that, when assumed to be true, raise a right to relief above the speculative level." (footnote and internal quotation marks omitted)).

The United States "Supreme Court has made clear that a Rule 12(b)(6) motion turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson*, 135 S. Ct. at 347), and the Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 135 S. Ct. at 346.

A court cannot look beyond the pleadings in deciding a Rule 12(b)(6) motion. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Pleadings in the Rule 12(b)(6) context include attachments to the complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Documents "attache[d] to a motion to dismiss are considered to be part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "Although the [United States Court of Appeals for the] Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims. Thus, when a plaintiff's claim is based on the

terms of a contract, the documents constituting the contract are central to the plaintiff's claim." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). "However, if a document referenced in the plaintiff's complaint is merely evidence of an element of the plaintiff's claim, then the court may not incorporate it into the complaint." *Id.*

And "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). "There is nothing improper about the district court considering the content of briefing that supports or opposes a motion under Rule 12(b)(6) when deciding such a motion" – although "[w]hen matters outside the pleadings are presented to the court in connection with a motion under Rule 12(b)(6), the motion must be treated as a Rule 56 motion for summary judgment and appropriate notice given to the parties." *Turnage v. McConnell Techns., Inc.*, 671 F. App'x 307, 309 (5th Cir. 2016).

## Analysis

Bank of America and VRM removed this action to federal court based solely on Section 1332(a) diversity jurisdiction. Although they have shown that the amount in controversy is satisfied by a preponderance of the evidence – "the Property has an

assessed value of $156,351.00 for 2017," Dkt. No. 26 ¶ 24; *see also* Dkt. No. 8-11 – the parties dispute whether complete diversity exists. Mr. Parsons insists that complete diversity is lacking because VRM and Mr. Parker are both Texas citizens and necessary parties to this suit. Bank of America and VRM counter that the citizenship of VRM and Mr. Parker should not be considered for the purpose of determining diversity because VRM and Mr. Parker have been improperly joined in this action.

Without reaching the question of whether VRM was improperly joined, the undersigned concludes that Mr. Parker was not improperly joined because there exists a reasonable basis for predicting that Mr. Parsons may recover against Mr. Parker. The citizenship of Mr. Parker thus destroys diversity, and the undersigned recommends granting Mr. Parsons's Motion to Remand.

I.     Mr. Parsons's Motion to Remand should be granted because Defendants have not met their heavy burden to show that Mr. Parker was improperly joined.

As the removing party, Bank of America and VRM must carry their heavy burden of proving improper joinder, *see Smallwood*, 385 F. 3d at 576, and show that Mr. Parsons either (1) committed "actual fraud in the pleading of jurisdictional facts," or (2) is unable "to establish a cause of action against the non-diverse party in state court," *Crockett*, 436 F. 3d at 532 (internal quotation marks omitted). Here, there is no dispute or allegation of actual fraud. The sole concern is whether Mr. Parsons "can survive a Rule 12(b)(6) challenge for failure to state a claim" against VRM and Mr. Parker. *Davidson*, 819 F.3d at 765. "[E]ven a single valid cause of action against [non-diverse] defendants ... requires remand of the entire case to state court." *Gray v.*

*Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004).

The undersigned notes that, although Mr. Parsons has filed a First Amended Original Petition since the case was removed, *see* Dkt. No. 12, "[t]o determine whether jurisdiction is present for removal, [the Court] consider[s] the claims in the state court petition as they existed at the time of removal," *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

In his Original Petition, Mr. Parsons alleges that, before foreclosing on the Property, "Aaron Parker did not send the proper notices required by Tex. Prop. Code. § 51.002," Dkt. No. 8-4 ¶ 19, and that Mr. Parker's failure constitutes wrongful foreclosure, *see id.* ¶ 21. As Bank of America and VRM point out in their response, Texas law imposes a duty upon substitute trustees to "act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust," *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011), and that duty is breached when the substitute trustee fails to strictly comply with the notice and sale provisions of Section 51.002, *see McIntosh*, 2012 WL 75141, at *4 (citing *Marsh*, 760 F. Supp. at 708). A trustee's breach of its duty does not give rise to an independent tort but may be brought as a claim for wrongful foreclosure. *See Foster v. Deutsche Bank Nat'l Trust Co.*, 2014 WL 12591926 (N.D. Tex. Aug. 22, 2104) (citing *Marsh*, 760 F. Supp. 2d at 708).

Bank of America and VRM contend that Mr. Parsons has failed to state a claim against Mr. Parker – and that his joinder was therefore improper – for two reasons:

-14-

because (1) "[Mr. Parker] was acting in his capacity as substitute trustee when he conducted the Foreclosure Sale, and he is shielded from liability," Dkt. No. 26 at 19; *see also* Dkt. No. 8 ¶ 24; and (2) "Plaintiff does not make any allegations that [Mr. Parker] acted contrary to its duties as a substitute trustee and has no basis to state a claim against it," *id.*

In support of their position, Bank of America and VRM cite to Texas Property Code §§ 51.007(a) and (f) as limitations on Mr. Parker's liability. *See* Dkt. No. 8 ¶ 24; Dkt. No. 26 ¶ 20. Section 51.007(a) allows a trustee named in a suit or proceeding to "plead in the answer that the trustee is not a necessary party by a verified denial stating the basis for the trustee's reasonable belief that the trustee was named as a party solely in the capacity as a trustee." TEX. PROP. CODE § 51.007(a). And Section 51.007(f) provides that "[a] trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." TEX. PROP. CODE. § 51.007(f).

The undersigned concludes that Texas Property Code §§ 51.007(a) and (f) do not bar Mr. Parsons's recovery against Mr. Parker because (1) Mr. Parker had not filed a verified denial at the time of removal and (2) Mr. Parsons has stated facts to show that Mr. Parker, by allegedly failing to send proper notices prior to foreclosure, breached his duty as substitute trustee and faces liability for wrongful foreclosure.

First, contrary to what Bank of America and VRM seem to argue in their Amended Notice, *see* Dkt. No. 8 ¶ 24 (" The Texas Property Code expressly states that

-15-

a substitute trustee is not a necessary party to a lawsuit arising from foreclosure proceedings asserting claims only against the substitute trustee only in their capacity as a substitute trustee."), "[S]ection 51.007 'does not ... stand for the proposition that a substitute trustee cannot be sued ever in that capacity or that she must automatically be dismissed simply because she is sued in her capacity as substitute trustee.'" *McIntosh v. U.S. Bank Nat. Ass'n*, No. Civ. A. H-11-3874, 2012 WL 75141, at *4 (S.D. Tex. Jan. 10, 2012) (quoting *Miller v. Chase Home Fin., LLC*, No. 3:09-cv-1503-K, 2010 WL 70089, at *3 (N.D. Tex. Jan.6, 2010)); *see also id.* ("[T]here is ... no merit in Defendants' contention that section 51.007 of the Property Code bars Plaintiffs' recovery from a substitute trustee. To begin with, [the substitute trustee] did not file a verified denial as permitted by section 51.007 to provide proof that he is not a necessary party to this suit."); *Santos Vaillancourt v. PNC Bank, N.A.*, No. 56:13-cv-133, 2014 WL 12499188, at *3 (S.D. Tex. Mar. 5, 2014) (finding that the trustees had not submitted a verified denial to relieve them of liability), *rev'd on other grounds and remanded sub nom. Vaillancourt v. PNC Bank*, *Nat. Ass'n*, 771 F.3d 843 (5th Cir. 2014); *Rodriguez v. Ocwen Loan Servicing, LLC*, No. C-07-471, 2008 WL 65405, at *4 (S.D.Tex. Jan.4, 2008) (explaining that Section 51.007 does not bar substitute trustees from being sued).

"Section 51.007 merely sets forth the procedure by which a substitute trustee may be dismissed from a lawsuit." *Miller*, 2010 WL 70089, at *3. After a defendant substitute trustee timely files the requisite verified denial, and within 30 days after,

the plaintiff may file a verified response to rebut the trustee's verified denial. TEX. PROP. CODE § 51.007(b). If no verified response is filed, "the trustee shall be dismissed from the suit ... without prejudice." *Id.* § 51.007(c).

Here, at the time of removal, Mr. Parker had not pleaded in a verified denial that he is not a necessary party to this lawsuit. Bank of America and VRM filed their Notice of Removal, simultaneously in this Court and in the County Court at Law No. 2 of Johnson County, Texas, on July 12, 2017. *See* Dkt. No. 1; Dkt. No. 11-1 at 1. Mr. Parker appears to have filed an answer two days later in state court. *See* Dkt. No. 11-1 at 1. Although, as Mr. Parsons points out, that answer did not contain a verified denial, "any post-removal filing in the state court is void because the case was no longer pending there." *Maurer v. Wal-Mart Stores, Inc.*, No. 3:16-cv-2085-BN, 2016 WL 5815892, at *7 (N.D. Tex. Oct. 5, 2016) (citing to *McAdams v. Medtronic, Inc.*, Civ. A. No. H-10-2336, 2010 WL 2710393, at *4 (S.D. Tex. July 7, 2010)); *see also McAdams*, 2010 WL 2710393, at **2, 3 (also noting that "Fifth Circuit Case law consistently suggests that the state court is divested of jurisdiction when the state court receives either actual or constructive notice of the removal," and "[t]he Fifth Circuit case law has been quite consistent in holding that the state court ceases to have jurisdiction when the state court is given notice" (collecting cases)).

Although Mr. Parker's subsequent motion to dismiss, correctly filed in this Court, appears to contain a verified denial, it was filed after Bank of America and VRM removed the case to federal court. And because "[a] court's review for improper joinder

-17-

is typically restricted to the live pleadings at the time of removal," *Foster*, 2014 WL 12591926, at *2 (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)); *see also Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000) ("The jurisdictional facts that support removal must be judged at the time of the removal."), Mr. Parker's post-removal verified denial has no bearing on whether Mr. Parker was improperly joined.

Second, Bank of America's reliance on Section 51.007(f) is misplaced, because Mr. Parsons's Original Petition seeks to hold Mr. Parker liable, not for relying on information from Bank of America, but for failing to send notices required by the Property Code. *See* Dkt. No. 8-4 ¶¶ 19-20. And, as discussed above, Section 51.007 does not bar Mr. Parsons from recovering from Mr. Parker for wrongful foreclosure on those grounds.

The undersigned concludes that Mr. Parker is not shielded from liability under Section 51.007(a) and Section 51.007(f) because Mr. Parker had not filed a verified denial at the time of removal and Mr. Parsons has stated facts showing that Mr. Parker breached his duty as substitute trustee to give rise to a wrongful foreclosure claim. And, because Bank of America and VRM advance no other arguments disputing the sufficiency of Mr. Parsons's claims against Mr. Parker, the undersigned concludes that Bank of America and VRM have not met their heavy burden in showing that Mr. Parker was improperly joined.

## Recommendation

The Court should grant Plaintiff's Motion to Remand [Dkt. No. 11] for the

-18-

reasons explained above and remand this action to County Court at Law No. 2 of Johnson County, Texas, from which it originated.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific findings or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, expect upon gourds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1417 (5th Cir. 1996).

Dated: December 15, 2017

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-19-